652 A.2d 781

PARK PLACE EAST CONDOMINIUM ASSOCIATION, PLAINTIFF,
v. HOVBILT, INC., ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division Monmouth County

September 8, 1994.

*Thomas Vincent Giaimo,* for plaintiff.

*David W. Phillips,* for defendants, First Fidelity Bank, N.A. and Hovbilt Condos/Fidoreo, Inc., *(Robinson, St. John & Wayne,* attorneys).

McGANN, Jr., J.S.C.

The plaintiff condominium association (Association or plaintiff) brought this action to foreclose liens for unpaid maintenance fees assessed against seventeen condominium units in a 128 unit complex. The issue presented by defendants' motion is the amount of counsel fees to which the Association is entitled under the law and circumstances of this case. The facts are not in dispute.

First Fidelity Bank granted a construction loan for the condominium project to its developer, Hovbilt, Inc., (Hovbilt or defendant) and took back a mortgage as security for payment of the loan. In the usual fashion as units were built and sold, releases from the mortgage were given in return for stated payments on the debt. There came a time, when, in accordance with the terms of the recorded Master Deed, there was a sufficient number of units sold as to allow their owners to take over the operations of the Association from the builder-developer. The reversal experienced by the economy in the late 1980s led to the inability of Hovbilt to sell the last seventeen units. It not only defaulted on its payments under the First Fidelity loan (on this project as well as others), but defaulted in payment of maintenance charges on those seventeen units to the Association. First Fidelity began a foreclosure action on its mortgage; the Association directed its attorney to prepare and record liens against the seventeen units for unpaid charges. When no payment was forthcoming from Hovbilt, the Association further authorized its attorney to proceed with foreclosure of the liens. This action was filed on June 11, 1991, and Notices of Lis Pendens were recorded.

During the pendency of the First Fidelity foreclosure action, it agreed to accept a deed from Hovbilt for the seventeen units in lieu of foreclosure. The deed at First Fidelity's direction was made to Hovbilt Condos/Fidoreo, Inc., a corporation created and controlled by First Fidelity. That deed was expressly made subject to the recorded liens for unpaid management charges. The Association promptly amended its complaint to join the new entity.

Thereafter, the Association's attorney and the attorneys representing the new owner of the units had many discussions regarding satisfaction of the outstanding liens. None bore fruit. Hovbilt Condos/Fidoreo then essayed a motion for summary judgment seeking a declaration that under applicable law it had no responsibility to pay the outstanding charges to the association. That motion was denied. No appeal was taken.

Instead, defendant entered into an agreement with the Association whereby the liens with interest and a proportionate share of claimed counsel fees would be paid as each unit was sold. Hovbilt Condos/Fidoreo reserved its right to challenge entitlement to those counsel fees (or some part thereof) at an appropriate time. In that fashion, all 17 units have been sold; all maintenance charges have been paid in full; substantial counsel fees have been paid to the Association.

The only item to be resolved is plaintiff's motion for an allowance of its counsel fees.

■ The Association's entitlement to such allowance is based on R. 4:42-9 which, in pertinent part, provides:

4:42-9. Counsel Fees

(a) Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the trial costs or otherwise [1], except

---

[1] This restates the so-called "American Rule" regarding counsel fee allowances. *Coleman v. Fiore Bros.*, 113 *N.J.* 594, 552 *A.2d* 141 (1989).

. . . .

(8) In all cases where counsel fees are permitted by statute.[2]

Under the terms of the Condominium Act (*N.J.S.A.* 46:8B–1 to –38), *N.J.S.A.* 46:8B–21 states:

The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of the common expenses or otherwise, together with interest thereon and, if authorized by the Master Deed or by-laws, reasonable attorney's fees.

. . . .

Liens for unpaid assessments may be foreclosed by suit brought in the name of the association in the same manner as a foreclosure of a mortgage on real property. . . . Suit to recover a money judgment for unpaid assessments may be maintained without waiving the lien securing the same.

The Master Deed for this condominium project in Section 7 states:

No unit owner may waive or otherwise avoid liability for common expenses by non-use of the common elements. Each such assessment shall be a continuing lien upon the unit against which it was made . . . together with such interest thereon and costs of collection thereof (including reasonable attorneys fees). Liens for unpaid common expense assessments may be foreclosed by suit brought in the name of the Association in the same manner as a foreclosure of a mortgage on real property. . . .

Article VI Section 10 of the By–Laws of the Association provides:

In the event that the Board (of Directors of the Association) shall effectuate collection of said assessments or charges by resort to counsel, and/or the filing of a lien, the Board may add to the aforesaid assessments or charges a sum or sums of twenty (20%) percent of the gross amount due, as counsel fees. . . .

The legislative scheme for collection of assessments for maintenance charges against individual unit owners is a recognition that such charges are the financial life-blood of the Association. They are conceptually akin to the right of a municipality to levy and collect real estate taxes. The legislature clearly did not intend that the necessary income stream be reduced by the

---

[2] *Island House Condo v. Feldman*, 245 *N.J.Super.* 407, 585 A.2d 982 (Ch.Div. 1990).

payment of "reasonable attorneys fees" incurred in the process of collection of the charges.[3]

The collection of overdue charges by a condominium association may vary from the simple to the complex. Success might be achieved by reason of follow up notices and telephone calls from the management office. Thereafter, if "turned over for collection" to the association attorney, it might be accomplished by a letter or two from him or her threatening initiation of the lien process and ultimate foreclosure. Failing that, the lawyer would prepare and record the lien, and might thereafter receive payment without more. The filing of a Complaint in foreclosure of the lien and the recording of a Notice of Lis Pendens would be the next step and, if payment still was not made, the entry of Final Judgment and subsequent Sheriff's sale would assure payment of the lien for charges and all arrearages thereon.

In each of these situations (save the first),[4] the Association's reasonable attorney's fees are to be paid by the delinquent party. That is the legislative intent. The amount of the fees would vary according to the extent of the services required to obtain payment.

By virtue of its by-law, this association has alerted its members that they must pay counsel fees if the matter is turned over to counsel and that (depending on the extent of the services rendered before a foreclosure suit was started) those services may well cost the member as much as twenty percent of the gross amount due. Thus, the member is made aware of the reality that if the lawyer must prepare and file a lien, deal with whatever time, effort and negotiations are necessary to collect the charges (and thereafter prepare and record a discharge of the lien), the member should

---

[3] A similar rationale underpins the allowance of counsel fees to a foreclosing mortgagee in *R.* 4:42–9(a)(4) and to a municipality seeking to liquidate tax liens, in *R.* 4:42–9(a)(5). And see also *R.* 4:42–10.

[4] Where collected by office personnel no attorney's services are involved and the effort devoted to collection is simply absorbed in administrative overhead.

expect to pay an added amount up to twenty percent of the gross amount collected.

In this case the gross amount collected on the 17 liens filed was $34,488.02. Twenty percent of that sum is $6,897.60. In addition, the association had out of pocket costs of $20.00 for each recording and $20.00 for each discharge of a lien (seventeen)—a total of $680.00. Under its by-law the Association was entitled to charge defendant $7,577.60 in counsel fees and costs. Hovbilt Condos/Fidoreo does not dispute that charge.

Because Hovbilt and its successor in title, Hovbilt Condos/Fidoreo, Inc., disputed their responsibility to pay the maintenance charges, the Association had to take the ultimate step of authorizing its lawyer to proceed with foreclosure of the liens. That required of the lawyer title searches, preparation and filing of the complaint (ultimately with three amendments); preparation and recording of 17 notices of Lis Pendens; service of process; extensive negotiations towards payment in an attempt to avoid continued litigation and, ultimately, briefing and successfully arguing the association's opposition to the defendant's motion for a declaration that Hovbilt Condo/Fidoreo was not liable to pay. As noted, the denial of that motion for all practical purposes was the end of the litigation. Thereafter, the parties worked out a schedule for payment as each unit was sold.

Plaintiff claims that it is entitled to reimbursement of its reasonable attorney's fees necessary to obtain payment of what was justly due to it—the maintenance charges. The legislative intent expressed in *N.J.S.A.* 46:8B–21 is clearly sufficient to support that entitlement; the provisions of the Master Deed make that result binding on the unit owners. The by-law speaks to the lien process and payment without the necessity to foreclose on those liens through litigation. The by-law put a "cap" on prelitigation counsel fees; it did not address the foreclosure situation. Both statute and Master Deed provide legal authorization for those additional reasonable attorney's fees.

Therefore, the Association is entitled to recover from Hovbilt Condos/Fidoreo, Inc. reasonable attorneys fees and costs charged in connection with the foreclosure litigation.

■ In order to determine what amount should be allowed, the court has examined the attorney's detailed and monthly statements of services rendered to the association from August of 1990 through April 1994. The hourly rate charged by the attorney was $125 from August 1990 through October 1992 and thereafter, $150. These hourly rates are reasonable. In evaluating the statements of services, those which did not directly pertain to recovering the charges were excluded. In that category were services rendered to the association on other matters, services covered by the twenty percent allowance set forth above, services in connection with the discharge of a tax sale certificate on certain units held by a private party. After making those exclusions, the court adjudges that plaintiff should be allowed $27,500 in counsel fees.

In addition, the following costs are to be added:

| | |
|---|---|
| Filing of Complaint | $135.00 |
| Sheriff's fees | 121.30 |
| Search fees | 235.00 |
| Filing fees for motions (3) | 45.00 |
| State Capital Title and Abstract Co. (certificate of regularity process) | 155.00 |
| Filing Notices of Lis Pendens (17) | 51.00 |
| Discharging Lis Pendens (17) | 51.00 |
| | $793.30 |

No allowance was made for charges usually included in office overhead—mailing, telephone calls, delivery services, copying, etc.

Plaintiff's total entitlement is $35,870.90. It has already been paid $34,488.02 under protest. It is owed a balance of $1,382.88.

Plaintiff's counsel will submit the form of order in accordance with *R.* 4:42–1(a).